UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
TEVON THOMAS, et al.,

               Plaintiff,

      -against-

CITY OF NEW YORK, et al.,

               Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

Consolidated Cases
14 CV 7513 (ENV) (VMS)
16 CV 4224 (ENV) (VMS)


**PLAINTIFFS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION
FOR LEGAL FEES AND COSTS**


LUMER & NEVILLE
225 Broadway, Suite 2700
New York, New York 10007
(212) 566-5060

Attorneys for Moving Plaintiffs


Of Counsel
Michael Lumer, Esq.

### <u>TABLE OF CONTENTS</u>

Page

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

POINT I      THE FEES SOUGHT ARE REASONABLE AND
             APPROPRIATE AND SHOULD BE AWARDED
             IN THEIR ENTIRETY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

             A.    Legal Standard. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

             B.    The Court Should Not Reduce the Compensable Time. . . . . . . . . . . . 5

POINT II     THE HOURLY RATES REQUESTED BY COUNSEL
             ARE REASONABLE AND SHOULD BE AWARDED. . . . . . . . . . . . . . . 8

             A.    Michael Lumer's Hourly Rate is  Reasonable. . . . . . . . . . . . . . . . . . . 8

             B.    Prior Court Decisions Concerning Michael Lumer's Rate. . . . . . . . . . 12

                   i      Mariani v. City of New York, 12 CV 288 (NG):
                          Novelty and Complexity Rejected As Factors. . . . . . . . . . . . . 12

                   ii.    Hargroves v. City of New York, 03 CV 1668 (RRM) (VMS)
                          Michael Lumer's Hourly Rate for 2006-2007 Set at $400.. . . . . 13

                   iii.   Safo-Agyekum v. City of New York, 11 CV 4000 (CM)
                          Municipal Defendant Agrees to $425. . . . . . . . . . . . . . . . . . . 14

                   iv.    Blount v. City of New York, 11 CV 0124 (BMC)
                          Michael Lumer Described as "High-Caliber" Attorney. . . . . . 14

                   v.     Chow v. City of New York, 09 CV 1019 (BMC) (RLM)
                          Michael Lumer Awarded Hourly Rate of $400 in 2010. . . . . . 15

                   vi.    James v. City of New York, 15 CV 3657 (ERK) (PK)
                          Report and Recommendation That Michael Lumer be
                          Awarded Hourly Rate of $425 in 2017. . . . . . . . . . . . . . . . . 15

i

       C.     James C. Neville's Hourly Rate is Reasonable. . . . . . . . . . . . . . . . . . 16

       D.     Khalil El Assaad's Hourly Rate is Reasonable. . . . . . . . . . . . . . . . . . 17

       E.     Lumer & Neville's Paralegal Hourly Rate is Reasonable. . . . . . . . . . . 18

POINT III    FEES FOR THE FEE MOTION SHOULD BE
               AWARDED AS REQUESTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

POINT IV    THE COSTS INCURRED BY PLAINTIFF WERE
               REASONABLE AND NECESSARY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

## **TABLE OF AUTHORITIES**

Cases                                                                                    Pages

*A.R. v. N.Y. City Dep't of Educ.,*
407 F.3d 65 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Adorno v. Port Authority of New York and New Jersey,*
685 F.Supp.2d 507 (S.D.N.Y. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Anderson v. Cty. of Suffolk,*
2016 WL 1444594 (E.D.N.Y. Apr. 11, 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 22

*Andrews v. City of N.Y.,*
118 F. Supp. 3d 630 (S.D.N.Y. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Asare v. Change Grp. of New York, Inc.,*
2013 WL 6144764 (S.D.N.Y. Nov. 18, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Bailey v. Pataki,*
2016 WL 3545941 (S.D.N.Y. June 16, 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Barbour v. City of White Plains,*
788 F.Supp.2d 216 (S.D.N.Y. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Blount v. City of N.Y.,*
2011 WL 8174137 (E.D.N.Y. Aug. 12, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Blum v. Stenson,*
465 U.S. 886 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

*Capone v. Patchogue-Medford Union Free Sch. Dist.,*
2011 U.S. Dist. LEXIS 18194 (E.D.N.Y. Feb. 23, 2011) . . . . . . . . . . . . . . . . . . . . . . 23

*Charles v. City of New York,*
2014 WL 4384155 (S.D.N.Y. Sept. 4, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 21

*Chauca v. Park Mgmt. Sys., LLC,*
2016 WL 8117953 (E.D.N.Y. July 18, 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Chow v. City of New York,*
2010 U.S. Dist. LEXIS 51285 (E.D.N.Y. May 25, 2010) . . . . . . . . . . . . . . . . . . . . . . 15

*DeCurtis v. Upward Bound Intern., Inc.*,
2011 WL 4549412 (S.D.N.Y. Sept. 27, 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Demonchaux v. Unitedhealthcare Oxford*,
2014 WL 1273772 (S.D.N.Y. Mar. 27, 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Green v. Torres*,
361 F.3d 96 (2d Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Griffin v. Astro Moving & Storage Co. Inc.*,
2015 WL 1476415 (E.D.N.Y. Mar. 31, 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Hargroves v. City of N.Y.*,
2014 WL 1271039 (E.D.N.Y. Mar. 26, 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 14

*Hargroves v. City of N.Y.*,
411 F. App'x 378 (2d Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Hassan v. City of New York*,
2014 U.S. Dist. LEXIS 26194 (E.D.N.Y. Feb. 10, 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Hensley v. Eckerhart*,
461 U.S. 424 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 8

*In re Nissan Radiator/Transmission Cooler Litig.*,
2013 WL 4080946 (S.D.N.Y. May 30, 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*In re Telik, Inc. Sec. Litig.*,
576 F.Supp.2d 570 (S.D.N.Y.2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*James v. City of N.Y.*,
2017 WL 696026 (E.D.N.Y. Feb. 17, 2017). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*John v. Demaio*,
2016 WL 7469862, at *11 (E.D.N.Y. Sept. 29, 2016),
report and recommendation adopted,
2016 WL 7410656 (E.D.N.Y. Dec. 22, 2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

*Johnson v. City of New York*,
2016 WL 590457 (E.D.N.Y. Feb. 11, 2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 22

*Kassim v. City of Schenectady,*
415 F.3d 246 (2d Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*LeBlanc-Sternberg v. Fletcher,*
143 F.3d 748 (2d Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 8

*Lee v. Santiago,*
2013 WL 4830951 (S.D.N.Y. Sept. 10, 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*LV v. New York City Dep't of Educ.,*
700 F. Supp. 2d 510 (S.D.N.Y. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Miele v. N.Y. State Teamsters Conf. Pension & Ret. Fund,*
831 F.2d 407 (2d Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Millea v. Metro-North Railroad Co.,*
68 F.3d 154 (2d Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Murphy v. Lynn,*
118 F.3d 938 (2d Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Perdue v. Kenny A.,*
130 S. Ct. 1662 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

*Prot. One Alarm Monitoring, Inc. v. Exec. Prot. One Sec. Serv., LLC,*
553 F. Supp. 2d 201 (E.D.N.Y. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Quaratino v. Tiffany & Co.,*
166 F.3d 422 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7

*Rainola v. Bratton,*
2003 WL 1907865 (S.D.N.Y. Apr. 21, 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Reiter v. MTA New York City Transit Authority,*
457 F.3d 224 (2d Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 8

*Robinson v. City of New York,*
2009 WL 3109846 (S.D.N.Y. Sept. 29, 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Rodriguez v. Pressler & Pressler, LLP,*
2009 U.S. Dist. LEXIS 20655 (E.D.N.Y. Mar. 16, 2009). . . . . . . . . . . . . . . . . . . . . . . . 10

*Rosado v. City of New York,*
2012 WL 955510 (S.D.N.Y. Mar. 15, 2012)..................................... 20

*Rozell v. Ross-Holst,*
576 F. Supp. 2d 527 (S.D.N.Y. 2008)......................................... 10

*Safo-Agyekum v. City of New York,*
11 CV 4000 (CM) (S.D.N.Y.)................................................. 14

*Scott v. City of New York,*
643 F.3d 56 (2d Cir. 2011)................................................. 10

*Simmonds v. N.Y. City Dep't of Corr.,*
2008 WL 4303474 (S.D.N.Y. Sept. 16, 2008).................................. 18

*Stanczyk v. City of New York,*
752 F.3d 273 (2d Cir. 2014)................................................ 2

*Tatum v. City of New York,*
2010 WL 334975 (S.D.N.Y. Jan. 28, 2010).................................... 18

*Thorsen v. County of Nassau,*
2011 U.S. Dist. LEXIS 27992 (E.D.N.Y. Mar. 17, 2011)....................... 15

*Valley Disposal, Inc. v. Central Vt. Solid Waste Mgmt. Dist.,*
71 F.3d 1053 (2d Cir. 1995)................................................ 20

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
TEVON THOMAS, et al.,

      Plaintiff,

              <u>Consolidated Cases</u>
  -against-        14 CV 7513 (ENV) (VMS)
              16 CV 4224 (ENV) (VMS)
CITY OF NEW YORK, et al.,

      Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

## **PRELIMINARY STATEMENT**

    This civil rights case was initially brought by 18 plaintiffs who alleged that they were wrongly seized and arrested by the defendants. Some of the plaintiffs asserted malicious prosecution and denial of fair trial claims as well. The case was docketed as 14 CV 7513 (the "First Action"). Prior to the Court's order of February 14, 2017, consolidating this case with 16 CV 4224 (the "Second Action"), the defendants tendered Offers of Judgment pursuant to Fed. R. Civ. P. 68 to six of the plaintiffs (the "Moving Plaintiffs") who each accepted the offer. The terms of the offers provided, in relevant part, for the payment of reasonable legal fees and costs. The parties have not been able to resolve the issue of legal fees and costs.

    Accordingly, Plaintiff now moves for an award of attorney's fees, expenses and costs in the amount of $219,796.99, pursuant to Fed. R. Civ. P. 54, Local Rule 54.1, and the express terms of the defendant's offer of judgment and the judgment as entered.  In addition to the moving declarations and the exhibits attached thereto, the Moving Plaintiffs incorporate by reference the prior filings and information already before the Court.

**ARGUMENT**

**POINT I**

**THE FEES SOUGHT ARE REASONABLE
AND APPROPRIATE AND SHOULD BE
AWARDED IN THEIR ENTIRETY**

A.     Legal Standard

The standard method for determining a "presumptively reasonable fee" is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Stanczyk v. City of New York*, 752 F.3d 273, 284 (2d Cir. 2014); *Garcia v. City of New York*, 2013 WL 5574507 (E.D.N.Y. Oct. 9, 2013). In 2010, the Supreme Court reiterated that the lodestar method is "the guiding light of our fee-shifting jurisprudence." *Perdue v. Kenny A.*, 130 S. Ct. 1662, 1672 (2010) (internal quotes and citations omitted).  The Court noted that this method was "readily administrable" and "objective," and that "there is a strong presumption that the lodestar figure is reasonable." *Id.* at 1673; *see also*, *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998).

A reasonable hourly rate is ordinarily determined by the prevailing rates "in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  *Reiter v. MTA New York City Transit Authority*, 457 F.3d 224, 232 (2d Cir. 2006), quoting *Blum v. Stenson,* 465 U.S. 886, 896 n.11 (1984).  Courts may rely upon its own knowledge of private firm hourly rates in deciding what reasonable rates are in the community.  *See Miele v. N.Y. State Teamsters Conf. Pension & Ret. Fund*, 831 F.2d 407, 409 (2d Cir. 1987).

*Perdue* describes a reasonable fee, set at the "prevailing market rate in the relevant community," as one "that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Perdue*, 130 S. Ct. at 1672 (citations omitted). This requires that the courts grant full "lodestar" recoveries in successful cases, including reference to the "prevailing market rates in the relevant community…governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases." *Blum*, 465 U.S. at 893.

As the Court noted in *Blum*, "Congress directed that attorney's fees be calculated according to standards currently in use under other fee-shifting statutes: 'It is intended that the amount of fees awarded under [§ 1988] be governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases.'" *Blum*, 465 U.S. at 893 (quoting S. Rep. No. 94-1011, p. 6 (1976)). The Court continued,

> the critical inquiry in determining reasonableness is now generally recognized as the appropriate hourly rate…To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. A rate determined in this way is normally deemed to be reasonable, and is referred to – for convenience – as the prevailing market rate.

*Id.* at 898.

In determining a reasonable fee, a court must bear in mind the well-settled principle that the fees need not be proportional to the damages recovered in the underlying litigation. In fact, the Supreme Court has rejected a "rule of proportionality", i.e.,

3

mechanistically linking the prevailing plaintiff's legal fees to the amount of damages a civil rights plaintiff actually recovers. See *City of Riverside v. Rivera*, 477 U.S. 561, 574-575 (1986) ("Because damages awards do not reflect fully the public benefit advanced by civil rights litigation, Congress did not intend for fees in civil rights cases, unlike most private law cases, to depend on obtaining substantial monetary relief."). The Second Circuit has "repeatedly rejected the notion that a fee may be reduced merely because the fee would be disproportionate to the financial interest at stake in the litigation." *Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2d Cir. 2005). In so doing, the Second Circuit observed:

> [Section] 1988 was enacted in part to secure legal representation for plaintiffs whose constitutional injury was too small, in terms of expected monetary recovery, to create an incentive for attorneys to take the case under conventional fee arrangements. . . . If the district court reduced the fee in the belief that the claimed hours were simply disproportionate in a case involving a $2500 injury, without regard to the reasonableness of the attorney's expenditure of time in responding to the particular circumstances, this was error.

*Id.; see also Millea v. Metro-North Railroad Co.,* 68 F.3d 154 (2d Cir. 2011) ("Especially for claims where the financial recovery is likely to be small, calculating attorneys' fees as a proportion of damages runs directly contrary to the purpose of fee-shifting statutes. . . [t]he whole purpose of fee-shifting statutes is to generate attorneys' fees that are *disproportionate* to the plaintiff's recovery.") (emphasis in original); *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 424 (2d Cir. 1999) (rejecting a "billing judgment" rule that would limit an awardable fee to one rationally related to the recovery that could be expected *ex ante*).

In short, the plaintiff is entitled to recover his legal fees based on an evaluation

of the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.  In this case, both counsel's rate and the amount of time spent on the litigation are reasonable, and thus plaintiff should be permitted to recover the full amount sought.

B.      The Court Should Not Reduce the Compensable Time

As an initial matter, it is undisputed that this case concerns a common core of facts and legal theories, as the defendants affirmatively argued in their motion for consolidation, and the Court acknowledged in granting that motion. In their application, defendants argued that "As an initial matter, both the Thomas and Browne cases arise out of the same operative set of facts— . . . ." and "[f]urther, the questions of fact and law in these two cases are nearly identical in both cases . . . ." (See Defendants' Letter docketed as Document 74 at pp. 1,3). The Court then consolidated the actions, stating in a docket entry dated February 14, 2017, that it "concludes that 'common questions of law or fact' are likely to predominate. Indeed, the First Action shares a common core of facts and legal theories with the Second Action, as all of the plaintiffs in both cases were arrested in or outside of the same small private home on the same date and time by the same defendant officers pursuant to a singular search warrant for two units in the same three-unit building that arose out of a singular investigation by the NYPD.

It is settled that where the litigation involves "a common core of facts or will be based on related legal theories[, m]uch of counsel's time will  be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim

5

basis. Such a lawsuit cannot be viewed as a series of discrete claims . . . .Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." *Chauca v. Park Mgmt. Sys., LLC*, 2016 WL 8117953, at *3–4 (E.D.N.Y. July 18, 2016) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433–38 (1983)). *See also*, *Green v. Torres*, 361 F.3d 96, 98 (2d Cir. 2004) (noting that when claims contain "common core facts" they are not severable and attorney's fees are properly awarded); *Murphy v. Lynn*, 118 F.3d 938, 952 (2d Cir. 1997); *Griffin v. Astro Moving & Storage Co. Inc.*, 2015 WL 1476415, at *10 (E.D.N.Y. Mar. 31, 2015) ("A court need not reduce a fee award where 'the successful and unsuccessful claims were interrelated and required essentially the same proof.'").

To the extent that defendants may argue that the Moving Plaintiffs' recovery should be limited on a *pro rata* or proportionality basis, such an argument is without merit. The facts and ruling in *Hargroves v. City of N.Y.*, 2014 WL 1271039 (E.D.N.Y. Mar. 26, 2014) illustrate the proper course in a case such as this. There, two of the four plaintiffs accepted Offers of Judgment. The remaining plaintiffs' claims were later dismissed. In the subsequent fee motion practice, defendants argued that the fees ought to be halved. In rejecting this argument, the Hon. Roslynn R. Mauskopf adopted the report and recommendation of the Hon. Vera M. Scanlon, ruling:

> 'In determining the number of hours reasonably expended ... [a] district court should exclude excessive, redundant or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims.' However, consistent with the interrelated nature of the factual and legal issues in both this case and the underlying state cases, the claims, defenses, and strategies in this

6

case were closely intertwined. For instance, as Magistrate Judge
Scanlon noted, the 'hours spent preparing the unsuccessful
[p]laintiffs for their depositions ... were [also] hours reasonably
expended in furtherance of the prevailing [p]laintiffs' claims'
because, 'given that the case centered on [all plaintiffs'] unlawful
arrest as part of a group together, they had discoverable
information that was relevant to the successful [p]laintiffs'
claims.' Nevertheless, the R & R appropriately identified and
recommended that this Court exclude those hours attributable
exclusively to the unsuccessful plaintiffs' claims. Since discovery
and motion practice in this case focused on facts and legal issues
relevant to all plaintiffs, the Court concludes that a gross
percentage reduction is unnecessary.

*Hargroves*, at *5 (Quoting *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir.1999).

Here, to the extent that work was performed exclusively for the non-Moving
Plaintiffs, it can be (and was already) excluded. For example, the Moving Plaintiffs seek to
recover for attending the other plaintiffs' depositions. This was entirely necessary as each
plaintiff was also a fact witness. While the time spent preparing the non-moving plaintiffs for
these depositions would be similarly compensable, the Moving Plaintiffs are not including
those hours, which were considerable, in this fee request. (See the declaration of Michael
Lumer, dated April 14, 2017 (the "Lumer Dec.") at ¶¶ 57-62, and Exhibit 1). Accordingly,
the only deductions in terms of hours awarded ought to be for that work which can be
disentangled from the common core of facts and legal theories presented. As the Moving
Plaintiffs have not sought any such fees, and have presented their request in great detail,
broken down in one-tenth increments in a manner that allows the Court to readily identify
and assess each task performed. These records, viewed in the context of this litigation,
establish the reasonableness of the work performed and the time expended.

## POINT II

## THE HOURLY RATES REQUESTED BY COUNSEL ARE REASONABLE AND SHOULD BE AWARDED

A.     Michael Lumer's Hourly Rate is  Reasonable

The hourly rate of $500 charged and requested by plaintiff's counsel, Michael Lumer, is well within the range of rates awarded in comparable cases, and is consistent with prior judicial rulings addressing Mr. Lumer's hourly rates in civil rights matters. As discussed below, Mr. Lumer was awarded $425 per hour in 2011 and 2012, and $400 an hour based on a historical hourly rate of $400 for 2006-2007. It is now 2017 and counsel, who has been practicing for twenty years, is more experienced and accomplished than he was some five years ago when Courts (and the City of New York as well) were in agreement that his hourly rate of $425 was reasonable. Mr. Lumer's professional history is discussed in detail in the Lumer Dec. at ¶¶ 13-25.

As an initial matter, when determining the prevailing market rate, "current rates, rather than historical rates, should be applied in order to compensate for the delay in payment." *A.R. v. N.Y. City Dep't of Educ.*, 407 F.3d 65, 83 (2d Cir. 2005) (quoting *LeBlanc-Sternberg*, 143 F.3d at 764); *Reiter v. MTA N.Y. City Transit Auth.*, 457 F.3d 224, 232 (2d Cir. 2006.  Furthermore, when evaluating the reasonableness of the fees requested, the court should take into account the level of success that was obtained on behalf of the client. *See Hensley*, 461 U.S. at 440 ("[T]he extent of plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees.").  Here, the Moving

Plaintiffs received Offers of Judgment that were in excess of any monies defendants had offered prior to their issuance, and which were made only after lengthy and complex litigation was aggressively pursued by counsel, and thus represent a substantial success by any objective measurement in view of the facts.

Counsel's rate (which is his actual rate and not a fiction selected for the purpose this motion) is a relative bargain when viewed in comparison to those charged by mid-size and large firms for corporate and commercial litigation services. As reflected in the National Law Journal., as of 2013, the top eleven firms in terms of hourly rates were each based in New York.[1]  The average rate per partner at these firms in 2013 ranged from $915 to $1,055, and the highest rates at ten of these firms was $1,050 or higher. The average associate rate at these eleven firms ranged from $490 to $620, with ten of the firms' average rates running at $580 per hour or more.  In this context, the rate sought here by a highly experienced "high caliber" attorney is eminently reasonable, if not outright cheap when compared to what even average mid-level large firm associates were billing four years ago.

Moreover, a review of fees awarded locally in similar cases supports the instant request. *See, e.g.*, *Bailey v. Pataki*, 2016 WL 3545941, at *6 (S.D.N.Y. June 16, 2016) (awarding hourly rates of $550 to attorneys with 10 years of experience, and $600 to those with more); *Demonchaux v. Unitedhealthcare Oxford,* 2014 WL 1273772, at *7 (S.D.N.Y. Mar. 27, 2014) (awarding hourly rates of $600.00 for a partner and $500 for a senior associate in ERISA

---

[1]  The NLJ's 2013 firm survey for 2013 appears online in their January 2014 issue at: http://www.nationallawjournal.com/id=1202636785489/Billing-Rates-Across-the-Country?slreturn=20150716145910.

9

action); *Asare v. Change Grp. of New York, Inc.*, 2013 WL 6144764, at *19 (S.D.N.Y. Nov. 18, 2013) ($750 per hour for partner, $500 for senior associate, in FLSA action);  *In re Nissan Radiator/Transmission Cooler Litig.*, 2013 WL 4080946 (S.D.N.Y. May 30, 2013) ($750 per hour for partner and $650 for associate); *In re Telik, Inc. Sec. Litig.*, 576 F.Supp.2d 570, 589 (S.D.N.Y.2008) (approving rates ranging from $700 to $750 per hour); *Scott v. City of New York*, 643 F.3d 56, 59 (2d Cir. 2011) (holding $550 per hour rate in a FLSA case reasonable); *Barbour v. City of White Plains*, 788 F.Supp.2d 216, 225 (S.D.N.Y. 2011) (awarding rate of $625 to experienced civil rights litigator); *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 546 (S.D.N.Y. 2008) (awarding $600 per hour partner in employment discrimination case); *Robinson v. City of New York*, 2009 WL 3109846, *5 (S.D.N.Y. Sept. 29, 2009) ($500 per hour for a partner in 2009 in employment litigation case); *Rodriguez v. Pressler & Pressler, LLP*, 2009 WL 689056 (E.D.N.Y. Mar. 16, 2009) ($450 per hour for partner in civil rights case); *DeCurtis v. Upward Bound Intern., Inc.*, 2011 WL 4549412 (S.D.N.Y. Sept. 27, 2011) ($550 for a partner in labor and employment litigation); *Adorno v. Port Authority of New York and New Jersey*, 685 F.Supp.2d 507, 513–14 (S.D.N.Y. 2010) ($550 per hour for partner in civil rights litigation); *LV v. New York City Dep't of Educ.*, 700 F. Supp. 2d 510, 519 (S.D.N.Y. 2010) ($600 per hour a reasonable rate for experienced litigators). Indeed, even as early as 2003, rates of $400 for partners with comparable experience were considered reasonable. *Rainola v. Bratton*, 2003 WL 1907865, at *6 (S.D.N.Y. Apr. 21, 2003) ($400 per hour in 2003 reasonable for solo and small firm practitioners).  It is obviously true, as the Hon. Richard J. Sullivan observed in *DeCurtis,* local rates have been increasing over time. *DeCurtis*, 2011 WL 4549412, *3.

Plaintiff's counsel is not a stranger to civil rights litigation. As discussed below, and in his accompanying declaration, Mr. Lumer has previously moved for fees in various Eastern District actions seeking rates varying between $400 and $425 per hour.  In almost every instance, the Court granted his request without reduction. Three of these requests were made in 2010-2012, and a fourth, filed in 2013, expressly requested $400 hour at his historical rate for 2006-2007. On other occasions, the City has conceded the reasonableness of Mr. Lumer's hourly rate in its response to already-filed fee motions. These rulings, most of which issued years ago, further support the reasonableness of counsel's current rate of $500 per hour.

The defendants will likely point to historical rulings in the Eastern District awarding fees to more experienced counsel in the range of $300 to mid-$400 per hour, as though these numbers ought to etched in stone forevermore. This approach is unreasonable and unfair. Putting aside the false EDNY versus SDNY dichotomy that has flowed from the decisional law reliance on the "district" in which the case is adjudicated,[2] the idea that rates as determined at one point in time can or should define a proper rate in subsequent years is irrational. Under this theory, Mr. Lumer's hourly rate of $425 (first set in 2011 when Mr. Lumer had been a member of the bar for about 15 years), should not increase until the year

---

[2]  The Moving Plaintiffs respectfully suggest that this distinction has more application where differing districts are materially different. Here, the Brooklyn EDNY and the Manhattan SDNY courthouses are located in the same city and are but a few subway stops apart. The fact that they lie in different districts is not because there is a fundamental qualitative difference in the lawyering (or adjudicating) in the courthouses. It is an arbitrary and random division that does not reasonably nor rationally relate to the relative value of the services provided to people in the Bronx or Manhattan, as opposed to those who happen to litigate in Brooklyn or Queens.

11

2026, when he reaches his thirtieth anniversary as a member of the New York bar. Such a

mechanistic lockstep approach ignores the undeniable reality that the cost of living is

expanding on a constant basis, that $425 in 2011 is not the same as $425 in 2017, and that

Mr. Lumer is a more experienced attorney today, and thus reasonably entitled to a higher

rate.

B.      Prior Court Decisions Concerning Michael Lumer's Rate

        The hourly rate of $500, which Mr. Lumer has been charging since he and

James Neville opened Lumer & Neville in September 2013, was certainly fair and within

normal market parameters in 2013, and is all the more reasonable now, in mid-2017. Mr.

Lumer's hourly rate has been the subject of five different decisions by judges in the Eastern

District over the past several years, including a very recent report and recommendation to

which objections were filed and which is currently awaiting adjudication. In every case, with

the exception of the one open motion, Mr. Lumer's rate request has been approved without

reduction. The orders underlying these decisions underscore the reasonableness of Mr.

Lumer's request to be paid his actual fee of $500.

        i.      Mariani v. City of New York, 12 CV 288 (NG):
                Novelty and Complexity Rejected As Factors

        The last time Mr. Lumer received a final ruling on a motion for his

contemporaneous rate was in 2012, when he requested his then-current rate of $425 per hour

for work performed in a nondescript civil rights action. The case concerned a false arrest

claim that was resolved early in the litigation when plaintiff accepted a $5,001 offer of

12

judgment. The City objected to Mr. Lumer's rate, arguing that the case did not involve complex facts or questions of law and that a proper hourly rate would be $325. The Hon. Nina Gershon ruled in 2013 that the requested rate of $425 was reasonable.

*Mariani* is meaningful in that it reflects Judge Gershon's belief that, in mid-2013, it was perfectly reasonable to award Mr. Lumer his hourly rate of $425 for work performed in 2012 in a run-of-the-mill civil rights case decided very early in the litigation, and the ruling ought to inform the Court's response to the defendants' objections.

ii.     Hargroves v. City of New York, 03 CV 1668 (RRM) (VMS)
        <u>Michael Lumer's Hourly Rate for 2006-2007 Set at $400</u>

In 2013, prior to the formation of Lumer & Neville, Mr. Lumer submitted a fee request in *Hargroves v. City of New York* 03 CV 1668 (RRM) (VMS).  Although Mr. Lumer had just been awarded $425 per hour in two prior cases, he expressly requested an hourly rate of $400 because (a) the work had been almost exclusively performed in 2006 and 2007, and (b) there was a good argument that plaintiffs' counsel was at least partially responsible for the lengthy delay in the fee application.

As set out in his declaration in support of that fee application, Mr. Lumer had been heavily involved in the litigation of that action beginning in 2006, at which time Mr. Lumer had been a member of the bar for about 10 years (having been formally admitted in May 1996). In 2007 the parties began summary judgment motion practice, which was fully briefed and submitted in January 2008. No further work was performed until 2010, when the defendants' motion for summary judgment was denied. Two of the four plaintiffs then accepted offers of judgment, while two did not. The Second Circuit reversed on appeal,

finding the individual defendants were entitled to qualified immunity. *Hargroves v. City of N.Y.*, 411 F. App'x 378 (2d Cir. 2011). The motion for fees on behalf of the two plaintiffs who had accepted offers of judgment in 2010 was not filed until 2013.

Accordingly, Mr. Lumer expressly requested that the court fix his hourly rate at $400, even though he had already been awarded $425. His reasoning for explicitly requesting his historical rate was that the delay in time was at least partially attributable to plaintiffs, and thus he did not believe it appropriate to seek a higher hourly rate than what he would have asked for work performed in 2006-2007 had he moved more promptly.

Magistrate Judge Vera M. Scanlon agreed that this rate was appropriate and her recommendation was subsequently adopted by the Hon. Roslynn R. Mauskopf, who acknowledged that counsel " sought to be reimbursed at rates that are less than their current market rates." *Hargroves v. City of N.Y.*, 2014 WL 1271039, at *3 (E.D.N.Y. Mar. 26, 2014).

iii.    Safo-Agyekum v. City of New York, 11 CV 4000 (CM)
        <u>Municipal Defendant Agrees to $425/Hour</u>

On June 19, 2012, Mr. Lumer submitted a fee request on behalf of Kwabena Safo-Agyekum after the plaintiff accepted an offer of judgment, and, as it was his actual rate, requested $425 per hour. Shortly thereafter, the City of New York, rather than oppose the motion, offered to settle the issue of fees and costs by agreeing to pay $28,013.20, which was the exact amount originally requested by Mr. Lumer. In agreeing to pay Mr. Lumer the full amount he had billed at an hourly rate of $425, the City was essentially conceding that this rate, which had already been awarded to Mr. Lumer in a prior decision, was fair and reasonable.

14

iv.     Blount v. City of New York, 11 CV 0124 (BMC)
        Michael Lumer Described as "High-Caliber" Attorney

In 2011 Michael Lumer submitted a fee application seeking an hourly rate of

$425. Notably, the City did not oppose the reasonableness or validity of Mr. Lumer's hourly

rate, instead confining its response to an argument derived from settlement discussions

between counsel. The Court rejected the argument and granted the entire amount requested.

*Blount v. City of N.Y.*, 2011 WL 8174137, at *1 (E.D.N.Y. Aug. 12, 2011).

In so ruling, the Court stated that it "[found] counsel's rate of $425 to be

reasonable. Courts in this district have approved hourly rates exceeding $400 for high-caliber

civil rights attorneys." *Id.*, at *1 (citing *Thorsen v. County of Nassau*, 2011 U.S. Dist. LEXIS

27992, at *17–18 (E.D.N.Y. Mar. 17, 2011) (collecting cases) (finding $425 to be a

reasonable rate)). Judge Cogan further commented that, "I also note that counsel has over

fifteen years of experience, appearing in more than 150 federal lawsuits, including numerous

actions before this Court in which he has performed ably." *Id.*

v.      Chow v. City of New York, 09 CV 1019 (BMC) (RLM)
        Michael Lumer Awarded Hourly Rate of $400 in 2010

In May 2010, Mr. Lumer moved for sanctions against plaintiffs, who were his

former clients, and requested an hourly rate of $400.  The defendant City took no position

with respect to the motion practice and did not oppose the requested rate. The Court granted

the motion, finding that the rate "is reasonable and consistent with the rates of other

attorneys of similar experience who practice in this district." *Chow v. City of New York*, 2010

WL 2103046, at *4 (E.D.N.Y. May 25, 2010) (citations omitted). Michael Lumer had been

admitted for about 14 years at that time, which was nearly seven years ago.

> vi.   James v. City of New York, 15 CV 3657 (ERK) (PK)
>        Report and Recommendation That Michael Lumer be
>        <u>Awarded Hourly Rate of $425 in 2017 Pending</u>

In February 2017, the Hon. Peggy Kuo issued a report and recommendation opining that Mr. Lumer should be awarded $425 per hour. Judge Kuo found no basis to challenge the veracity of Mr. Lumer's billing (and proposed but one reduction, which was for the time spent drafting a reply memorandum in support of the fee motion). Judge Kuo recommended that counsel's hourly rate (which was requested at $500 and which the City of New York argued should be $350) remain at $425. The Court's reasoning was that while "Lumer has a significant amount of experience practicing civil rights law before the federal bar, he is not as experienced as the attorneys to whom $450 per hour has been awarded. The Court respectfully recommends that, in light of Lumer's experience, expertise, and the $425 rate awarded to him in the past, an hourly rate of $425 be found reasonable in this case." *James v. City of N.Y.*, 2017 WL 696026, at *3 (E.D.N.Y. Feb. 17, 2017) (citing *Anderson v. Cty. of Suffolk*, 2016 WL 1444594 (E.D.N.Y. Apr. 11, 2016)). The matter is presently pending before the Hon. Edward R. Korman.

C.   <u>James C. Neville's Hourly Rate is Reasonable</u>

James Neville has been practicing law for 30 years.  For many years Mr. Neville's practice was almost exclusively in the area of criminal defense, which more often than not was before courts in the Eastern and Southern Districts of New York.  Mr. Neville has handled a wide variety of serious felony cases, from homicides to organized crime and

RICO matters to white collar crimes and serious narcotics offenses. He has tried dozens of criminal cases to verdict in state and federal courts, as well as several civil rights actions. (Declaration of James C. Neville dated April 14, 2017 ("Neville Dec."), at ¶¶ 5-13).  In view of his years of experience and trial and litigation experience, Mr. Neville's actual hourly rate of $500 is relatively modest.

Mr. Neville began incorporating civil rights cases into his practice in 2009. While he still has a healthy criminal practice, the majority of his work now concerns police misconduct cases under §1983. It is undisputed that Mr. Neville's hourly rate has never been the subject of a motion in any civil rights action – which can be said for many such practitioners – and it is also true that Mr. Neville's involvement in civil rights litigation pales in comparison to his experience in criminal defense.  However, it would be misguided to place too much focus on such general facts.

As a skilled trial lawyer with an extensive background in criminal defense, Mr. Neville's expertise is of great value to L&N's civil rights practice generally, and was essential to the outcome of this case in particular. Put differently, years of experience delving into a specific body of law is plainly invaluable. However, knowing how to successfully prepare and try a case is an equally critically skill, and one that many lawyers, no matter how many years they have invested in one field or another, can never master.

C.    Khalil El Assaad's Hourly Rate is Reasonable

Mr. El Assaad is an extremely able, albeit junior, associate. An hourly rate of

17

$200 is more than reasonable, even without considering that his legal writing and research skills are advanced well beyond his years of practice. Comparable rates are often awarded in similar litigation, and should be granted here. *Andrews v. City of N.Y.*, 118 F. Supp. 3d 630, 640 (S.D.N.Y. 2015) (collecting cases for the proposition that hourly rates between $200 to $300 are reasonable for associates ranging from the newly admitted to those with several years of experience in FLSA actions).

While it is true that some courts have awarded less than $200 per hour for new attorneys, it is respectfully suggested that such a rate is unduly low for this market. Put differently, determining whether Mr. El Assaad's hourly rate is reasonable is not a task that requires him to establish that no other lawyer with similar experience has been paid less. Under such an approach, the lowest rate awarded to an attorney would become the standard rate, as though all attorneys are equal, save for the year of their admission, and all worth the same fee, which is always defined as the lowest common denominator. This is nonsensical, and the salient question before the Court is whether Mr. El Assaad's well deserved rate falls within the parameters of reasonable rates. The Moving Plaintiffs urge the Court to award Mr. El Assaad his actual rate of $200 per hour.

D.   Lumer & Neville's Paralegal Hourly Rate is Reasonable

An hourly rate of $125 for Jessica Alfarone and Chiara Montalto, both experienced and skilled paralegals, is well within a range of fees considered reasonable by courts in this district. For instance, in 2006, For instance, in 2008, the Hon. Naomi R.

18

Buchwald found that hourly rates as high as $150 had been previously found reasonable by

other courts. *Simmonds v. N.Y. City Dep't of Corr.*, 2008 WL 4303474, at *5 (S.D.N.Y. Sept. 16,

2008) (awarding more experienced paralegal $140 per hour). In 2010, the Hon. Paul G.

Gardephe found the requested hourly rate of $125 for paralegal services well within the

ambit of reasonableness. *Tatum v. City of New York,* 2010 WL 334975, at *9 (S.D.N.Y. Jan. 28,

2010). Both Ms. Alfarone and Ms. Montalto have bachelor's degrees and years of experience

at a variety of plaintiff-side litigation firms. Moreover, Ms. Alfarone was previously awarded

$100 per hour in *Charles v. City of New York*, 2014 WL 4384155, (S.D.N.Y. Sept. 4, 2014),

when she was working for a Brooklyn-based firm. An increased rate of $125 for work

performed in 2016 for Lumer & Neville is both reasonable and appropriate.

## POINT III

### FEES FOR THE FEE MOTION SHOULD
### BE AWARDED AS REQUESTED

As courts in both the Eastern and Southern Districts have concluded, it is

within the district court's discretion as to whether to award fees-on-fees in a post-Rule 68

setting, with the determination to turn on the reasonableness of the request. In this case, the

Moving Plaintiffs attempted to settle the issue of their legal fees and costs with defendants so

as to avoid burdening the Court and the parties with this motion practice. The defendants

never responded in any fashion. (Lumer Dec. at ¶¶ 86-88). As a result, the Moving Plaintiffs

had no choice but to expend further time formally litigating the issue. The defendants were

well aware that (i) they owed a substantial amount in legal fees under the Offers of Judgment,

(ii) that the only issue was the specific amount, and (iii) the Moving Plaintiffs would be

expending further time seeking a ruling absent an agreement. The defendants' decision to forego negotiations necessarily forced this expenditure of time, and it is only fair that defendants compensate the movants accordingly.

The defendants will likely argue that such an award is foreclosed by the language of the Offers of Judgment. While some courts within the Second Circuit may agree, others certainly do not. For instance, in September 2016, the Hon. Nicholas G. Garaufis rejected the same defendant's argument, and awarded plaintiff fees for the making of a fee motion following plaintiff's acceptance of a Rule 68 offer of judgment. *John v. Demaio*, 2016 WL 7469862, at *11 (E.D.N.Y. Sept. 29, 2016), report and recommendation adopted, 2016 WL 7410656 (E.D.N.Y. Dec. 22, 2016). In so ruling, the court acknowledged the existence of prior rulings that limited fees to the date of the offer of judgment, but also noted decisions to the contrary, before concluding that such fees-on-fees were permissible and that courts should evaluate an application for the costs of preparing the fee application in the same manner as the costs of litigating the case. *Id.*, (citing *Valley Disposal, Inc. v. Central Vt. Solid Waste Mgmt. Dist.*, 71 F.3d 1053, 1059 (2d Cir. 1995) for the latter rule).

In February 2016, this Court adopted the recommendation of Magistrate Judge Pollak that plaintiff be awarded fees-on-fees following the acceptance of a Rule 68 offer of judgment from the same municipal defendant. As in *Demaio*, the Court acknowledged decisions to the contrary, including some cited by the defendants now, but elected to award fees for the fee application because counsel was forced to "vigorously defend their qualifications and experience to justify their requested rate." *Johnson v. City of New York,* 2016 WL 590457, at *6

20

(E.D.N.Y. Feb. 11, 2016) (citations omitted).

In another such case, the Hon. Shira A. Scheindlin addressed the same argument from the same municipal defendant in March 2012. The Court noted that while the language of the offer might "arguably" bar fees-on-fees, the City was on notice that time spent on the fee application would become a component of the application and that equity favored a reasonable award for such fees. *Rosado v. City of New York,* 2012 WL 955510, at *6 (S.D.N.Y. Mar. 15, 2012); *Hassan v. City of New York*, 2014 U.S. Dist. LEXIS 26194, at *23 (E.D.N.Y. Feb. 10, 2014) (same); *Lee v. Santiago*, 2013 WL 4830951, at *13 (S.D.N.Y. Sept. 10, 2013) (same).

More recently, the Hon. Paul A. Engelmayer award fees for an application in a post-Rule 68 setting, even after plaintiffs refused to negotiate prior to the motion practice. *Charles v. City of New York*, 2014 WL 4384155, at *8 (S.D.N.Y. Sept. 4, 2014).

To be sure, as defendants note, and as those courts that have awarded fees-on-fees have expressly acknowledged, some courts in this Circuit have found that the limitation on fees through the date of the offer necessarily barred fees for the subsequent fee motion practice, regardless of how or why it came to pass. However, the more persuasive argument is that such fees are permissible and may be awarded.

The plain language of the relevant part of the Offers in question is as follows, "defendants hereby offer to allow [the Moving Plaintiff] to take a judgment against the City of New York in this action for the total sum of [the amount of the judgment], plus reasonable attorneys' fees, expenses, and costs to the date of this offer for [the Moving

Plaintiff's] federal claims." This language appears to foreclose the plaintiff's right to recover for time expended litigating the plaintiff's claims in the days following the offer, even if it is then accepted. On the other hand, the offer makes clear the amount of fees to be paid is to be determined at a future date, and the number of hours to be compensated, the work performed, and the hourly rate(s) of counsel to be paid, are all left for future adjudication. All of this is to say that the offer of a legal fees and costs to be paid in the future in an amount to be determined all but ensures a contentious and adversarial discussion, and often further litigation over a matter collateral to plaintiff's underlying civil rights claim.

Moreover, as articulated in *Rosado*, and echoed by other courts since, fairness dictates that fees for the fee application ought to be awarded on occasion. To hold otherwise would be to provide defendants with an incentive to avoid good faith settlement discussions, to take aggressively low positions that devalues both the plaintiffs' attorneys themselves and the work they performed. Defense counsel would be emboldened to take even more extreme positions because plaintiffs' counsel cannot always afford the many hours it can take to adequately defend their work and their worth. Fairness dictates that reasonable fees for work necessarily expended on a fee application are compensable, as other courts have agreed.

The question then is not whether the Court can award "fees on fees," but rather simply whether it should. Here, the defendants have been uncompromising throughout the litigation, and their failure to participate in any settlement discussions that might obviate the need for this additional labor is itself compelling evidence in support of such a fee award.

As for the reasonableness of the time spent, the Moving Plaintiffs are requesting compensation for a total of 13.0 hours for the fee motion practice, not including any further

labor that may be expended replying to defendants' opposition. This is well within the ambit of reasonableness as defined in other decisions in this district. *Johnson*, 2016 WL 590457, at *7 (Awarding fees for 30 hours of time expended on fee application); *Anderson v. Cty. of Suffolk*, 2016 WL 1444594, at *6-7 (E.D.N.Y. Apr. 11, 2016) (awarding fees for 21 hours on fee application and collecting cases for proposition that 25-30 hours is within a reasonable time). The Moving Plaintiffs respectfully submit that the Court can determine from its own evaluation of the motion as a whole whether the time expended reasonably correlates to the final product.

## POINT IV

### THE COSTS INCURRED BY PLAINTIFF
### WERE REASONABLE AND NECESSARY

The Offer of Judgment presented by the municipal defendant expressly delineated payment of plaintiff's costs as part of the overall consideration offered to plaintiff in exchange for agreeing to the accept defendants' offer.  As the Hon. Joanna Seybert has held, "[c]osts are ordinarily recoverable where they are 'incidental and necessary to the litigation.;"  *Capone v. Patchogue-Medford Union Free Sch. Dist.*, 04 CV 2947, 2011 U.S. Dist. LEXIS 18194 at 14 (E.D.N.Y. Feb. 23, 2011) (citation omitted). Moreover, "[t]hese costs routinely include filing fees, process servers, postage, travel, and photocopying." *Id.; See also, Prot. One Alarm Monitoring, Inc. v. Exec. Prot. One Sec. Serv., LLC,* 553 F. Supp. 2d 201, 210-11 (E.D.N.Y. 2008) (reviewing numerous cases in which courts held that attorneys have a right to recover the costs of filing, service of process, photocopying, travel, postage, and express mail).  The few costs plaintiff seeks here are typical of and ordinarily incurred in such actions

and well within reasonable limits.

Plaintiff is seeking $7,066.99 in costs, which cover the filing and service of this action, seven days of deposition testimony by the five defendants, and less than $100 in duplicating costs. (See Exhibits 7-9 to the Lumer Dec.). While the Moving Plaintiffs have other costs in this case related to, for example, postage, and minor matters incidental to the litigation, the movants are not seeking to recover these costs. Rather, he is requesting that defendants pay his filing fee and service of process costs, which are both documented and eminently reasonable.

## **CONCLUSION**

For the foregoing reasons, the Court should award plaintiff the entirety of the

award he is seeking, which consists of legal fees in the amount of $212,730.00, as well as

costs in the amount of $7,066.99, for a total award of $219,796.99.

Dated:   New York, New York
April 14, 2017

LUMER & NEVILLE
Attorneys for the Moving Plaintiffs
225 Broadway, Suite 2700
New York, New York 10007
(212) 566-5060

_____

By:  Michael Lumer

To:     All counsel of record (By mail and email)